UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re VASAN DESHIKACHAR,

                                                    Bankruptcy Case No. 13-62545
            Debtor.                                 Adv. Proc. No. 14-4318

JOYCE COLLINS,

            Plaintiff / Appellee,

                                                    Case No. 15-cv-11679
v.

                                                    HON. MARK A. GOLDSMITH
VASAN DESHIKACHAR,

            Defendant / Appellant.
_____/

**OPINION AND ORDER**
**OVERRULING APPELLANT'S OBJECTIONS (Dkt. 10), ACCEPTING THE**
**MAGISTRATE JUDGE'S RECOMMENDATION DATED NOVEMBER 13, 2015 (Dkt.**
**9), AND AFFIRMING THE ORDER OF THE BANKRUPTCY COURT**

Appellant Vasan Deshikachar, proceeding pro se, appeals the bankruptcy court's order

granting Appellee Joyce Collins's motion to enforce a settlement agreement and dismissing the

adversary proceeding on terms consistent with that agreement.  After referral by the Court,

Magistrate Judge Elizabeth A. Stafford issued a Report and Recommendation ("R&R"),

recommending that this Court affirm the bankruptcy court's order.  See Collins v. Deshikachar

(In re Deshikachar), No. 15-11679, 2015 WL 7188371, at *5 (E.D. Mich. Nov. 13, 2015) (Dkt.

9).  Deshikachar filed objections to the R&R (Dkt. 10), to which Collins filed a response (Dkt.

11).

The factual and procedural background, along with the standard of review and legal

principles governing appeals from a final bankruptcy order, have been adequately set forth by the

Magistrate Judge in her R&R and need not be repeated here in full.  In summary, this appeal is

1

the culmination of a long-litigated sexual harassment claim by Collins, which resulted in a $170,000 Michigan circuit court consent judgment, the enforcement of which was blocked when Deshikachar filed the instant Chapter 7 proceeding. In re Deshikachar, 2015 WL 7188371, at *1. After Collins filed an adversary proceeding alleging that the consent judgment was a non-dischargeable debt, the matter was referred to mediation, resulting in a handwritten "term sheet" confirming the settlement, signed by the parties and their counsel. Id. at *1-2. When Deshikachar later claimed that no agreement had been reached, Collins filed a motion to enforce the settlement agreement, which the bankruptcy court granted. Id. at *2-3. Following Deshikachar's appeal of the order, this Court referred the matter to Magistrate Judge Stafford for an R&R (Dkt. 5).

The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have."). Any arguments made for the first time in objections to an R&R are deemed waived. Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013). For the reasons discussed fully below, the Court overrules Deshikachar's objections, accepts the recommendation contained in the R&R, and affirms the bankruptcy court's order.

# I. ANALYSIS[1]

---

[1] Deshikachar's first, second, fourth, and fifth objections do not actually cite any specific portion of the R&R. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) ("The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specifically consider."). On that basis alone, those objections may be overruled. Nevertheless, affording these objections a liberal construction, the Court will assume that Deshikachar made specific objections addressing particular legal conclusions or factual findings in the R&R.

**A. First, Second, and Third Objections**

Like the bankruptcy court, the Magistrate Judge concluded that the parties reached a settlement during mediation and reduced the agreement to a signed writing — referred to as the "term sheet" — which contained all essential terms.  See In re Deshikachar, 2015 WL 7188371, at *1, *5; see also 4/29/2015 Order at 62-63 (cm/ecf pages) (Dkt. 4); 4/29/2015 Mot. Hr'g at 268, 270, 273-274, 278 (cm/ecf pages) (Dkt. 4); Term Sheet at 24 (cm/ecf page) (Dkt. 4).  The Magistrate Judge then held that the term sheet could be admitted as evidence under Local Bankruptcy Rule 7016-2(a)(5), which provides:

> All proceedings and writings incident to the mediation shall be privileged and confidential, and shall not be reported or placed in evidence.  No party shall be bound by mediation unless a settlement is reached.  If a settlement is reached, the agreement shall be reduced to writing.

Id. at *4-5 (quoting E.D. Mich. LBR 7016-2(a)(5)).  According to the Magistrate Judge, "deeming the signed settlement agreement inadmissible would contradict the second and third provisions" of the Local Rule.  Id. at *5.

Deshikachar does not argue that a written settlement agreement is inadmissible under the Local Bankruptcy Rule.  See Appellant Objs. at 2.  Rather, Deshikachar's first three objections (which contain some repetitive arguments) together argue that the term sheet did not constitute an enforceable written settlement agreement and, therefore, was not admissible under the Local Bankruptcy Rule.  Analyzing these objections together, the Court overrules them all.

**1. Governing Law**

In his first objection, Deshikachar challenges the Magistrate Judge's "interpretation and application of" Local Bankruptcy Rule 7016-2(a)(5).  Appellant Objs. at 1.  In particular, Deshikachar argues that the Magistrate Judge "erred by using Michigan contract law as the sole

controlling authority to deem a mediation term-sheet . . . sufficient to satisfy" the exception of the Local Bankruptcy Rule for written settlement agreements.  See id. at 2 (emphasis omitted).  Deshikachar suggests that, instead of Michigan law, the Magistrate Judge should have relied on California contract law.  See id. at 3 (citing Fair v. Bakhtiari, 147 P.3d 653 (Cal. 2006)).

Upon de novo review, the Court agrees with the decision of the bankruptcy court and Magistrate Judge to apply Michigan contract law to determine whether a term sheet entered into at the conclusion of mediation constitutes a written settlement agreement.

Generally, in bankruptcy proceedings, federal courts will apply state law to determine the validity and interpretation of a settlement agreement.  Royal Bank & Trust Co. v. Pereira (In re Lady Madonna Indus., Inc.), 76 B.R. 281, 288-289 (S.D.N.Y. 1987) (recognizing that a "long line of precedent supports the view that state law customarily governs the validity, enforcement and interpretation of settlement agreements," and declining "to adopt a separate federal common law rule for determining the existence of a settlement in a bankruptcy case") (citing cases).  The Sixth Circuit has followed this principle.  See Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc., 568 F. App'x 398, 401 n.2 (6th Cir. 2014) ("Because settlement agreements are a type of contract, questions of their formation and enforceability are governed by state contract law.").

As for which state's law should apply, Michigan's is the obvious choice of law, because the settlement was negotiated and reached here.  Id. ("The parties apply Michigan substantive law in their briefs as this is where the settlement agreement was formed.  We therefore apply Michigan law in our analysis.").  This result is consistent with the Restatement (Second) of Conflict of Laws, which is the guidepost for Michigan choice-of-law decision making.  See Uhl v. Komatsu Forklift Co., Ltd., 512 F.3d 294, 302 (6th Cir. 2008).  The Restatement's factor analysis — which takes into account the location where the contract was negotiated and

performed, as well the residence of the parties, see Restatement (Second) of Conflict of Laws § 188(2) (1971) — confirms Michigan as the indisputable choice of jurisdiction for applicable law.

Deshikachar fails to provide any argument or authority to suggest that, under the Restatement approach or any other choice-of-law authority, Michigan law would not control issues surrounding the formation or enforceability of settlement agreements negotiated and reached in Michigan between Michigan residents. Nor does Deshikachar provide any authority that this Court should consider California law binding on the resolution of this issue. Therefore, Deshikachar's argument that the Magistrate Judge should have relied on California law, as opposed to Michigan law, is entirely without foundation.

Deshikachar's remaining arguments address whether the term sheet itself constituted an enforceable settlement agreement, and are similarly without merit.

### 2. Agreement to Agree

In his second objection (and part of his first objection), Deshikachar appears to argue that the term sheet is not an enforceable settlement agreement, because it was merely an agreement between the parties to enter into a future settlement agreement, and at least Deshikachar did not intend to be bound by the term sheet. See Appellant Objs. at 4. According to Deshikachar, the "parties intended to incorporate the terms of the mediation term sheet into a Final Settlement Agreement . . . including 'procedural issues' etc [sic] so that it can be executed following the mediation and the parties intended to be bound by it." Id.

Under both de novo review and the "clearly erroneous" standard, the Court concludes that the bankruptcy court properly found that the term sheet constituted a valid settlement

agreement, a conclusion with which the Magistrate Judge agreed.  See 4/29/2015 Mot. Hr'g at 268, 270, 273-274, 278 (cm/ecf pages); In re Deshikachar, 2015 WL 7188371, at *1, *5.

"An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts."  Kloian v. Domino's Pizza L.L.C., 733 N.W.2d 766, 770 (Mich. Ct. App. 2006). To form a valid contract under Michigan law, "there must be a meeting of the minds, or mutual assent, with respect to all material terms of the contract."  McCormick v. Brzezinski, No. 08-10075, 2010 WL 1463176, at *2 (E.D. Mich. Apr. 13, 2010).  "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind."  Monroe Bank & Trust v. Jessco Homes of Ohio, LLC, 652 F. Supp. 2d 834, 838 (E.D. Mich. 2009).  "When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement."  RE/MAX Int'l, Inc. v. Realty One, Inc., 271 F.3d 633, 646 (6th Cir. 2001).

Furthermore, "[i]t is well-recognized that it is possible for parties to make an enforceable contract binding them to prepare and execute a subsequent agreement."  Hansen v. Catsman, 123 N.W.2d 265, 266 (Mich. 1963); Opdyke Inv. Co. v. Norris Grain Co., 320 N.W.2d 836, 838 (Mich. 1982) ("A contract to make a subsequent contract is not per se unenforceable; in fact, it may be just as valid as any other contract.").  If the parties have agreed on all essential terms, the subsequent agreement "is considered a mere memorial of the agreement already reached."  Hansen, 123 N.W.2d at 266.

The term sheet representing the agreement between Deshikachar and Collins included provisions addressing down payment, payment schedule, balloon payment, prepayment penalty, default, a requirement for dismissal of the adversary proceeding in exchange for payment, and

the signatures of both parties and their respective attorneys.  See In re Deshikachar, 2015 WL 7188371, at *4; Term Sheet at 24 (cm/ecf page).  Deshikachar does not argue that any of these material terms was not fully agreed to by the parties.

Although Deshikachar claims that the attorneys were still discussing "procedural issues," see Appellant Objs. at 4, he does not explain what type of procedural issues remained.[2]  Nor does Deshikachar provide any authority or explanation to support an argument that any unresolved procedural issues amounted to material terms that had not already been agreed upon by the parties during mediation.  See RE/MAX Int'l, Inc., 271 F.3d at 646 (affirming the district court's enforcement of a settlement agreement and holding that "all the essential terms had been agreed upon . . . and all that remained was to sort out the non-material details and put the agreement in writing").  And while Deshikachar may claim that he did not intend to be bound by the term sheet, whether there was mutual assent on all material terms is not determined by his subjective state of mind.  See Monroe Bank & Trust, 652 F. Supp. 2d at 838.  Rather, Deshikachar's participation in the mediation and his signature on the term sheet evidence an objective intent to be bound by the terms of the settlement agreement.

Therefore, the Court agrees with both the bankruptcy court and the Magistrate Judge that the parties reached an agreement at the close of mediation on all material terms, which was memorialized in the written term sheet, executed by the parties and their counsel.  Because the

---

[2] Collins agrees that there were follow-up discussions after the mediation, but argues that they did not alter any of the material terms of the settlement agreement.  Appellee Resp. at 15 (Dkt. 11).  Collins further states that the "follow-up discussions between the attorneys dealt primarily with the procedural posture of the documents that were to be filed in the Bankruptcy Court and standard boiler plate provisions found in almost every settlement agreement that did not touch upon any of the key terms that had already been agree to and memorialized by the Term Sheet." Id.  Deshikachar effectively concedes this argument by not replying to it.  See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V., 69 F. Supp. 3d 175, 226 (D.D.C. 2014) ("[A] party appeared to concede an argument by not addressing it in the reply brief.").

term sheet constitutes an enforceable settlement agreement, Deshikachar's second objection (and the related portion of his first objection) lack merit.

### 3. Ambiguity

Like the bankruptcy court, the Magistrate Judge concluded that the language in the term sheet was clear and unambiguous. In re Deshikachar, 2015 WL 7188371, at *4; 4/29/2015 Mot. Hr'g at 270-273, 278 (cm/ecf pages). Deshikachar puts forth two arguments challenging this conclusion in his third objection (and part of his first objection).

Deshikachar first argues that the term sheet was ambiguous, because he thought the Greek letter pi ("π") in the term sheet "was referring to [the] trustee who would receive the payment and that would fore-stall [sic] any garnishment efforts from higher priority creditors that had survived his chapter 7 filing[.]" Appellant Objs. at 5. However, on appeal, Deshikachar did not raise this argument in either his opening brief (Dkt. 3) or "rebuttal" brief (Dkt. 8). Because this argument was made for the first time in his objections to an R&R, it is deemed waived. See Uduko, 975 F. Supp. 2d at 757.

Nevertheless, even on the merits, Deshikachar's argument is unavailing. Under Michigan law, a court "must enforce the terms of the settlement agreement as written, 'interpreting the unambiguous language in its plain and easily understood sense.'" Hidrofiltros, de Mexico, S.A. de C.V. v. Rexair, Inc., 355 F.3d 927, 930 (6th Cir. 2004) (quoting Gelman Scis., Inc. v. Fidelity & Cas. Co. of New York, 572 N.W.2d 617, 623 (Mich. 1998)). The test for ambiguity under Michigan law is whether a term "is equally susceptible to more than a single meaning." RBS Citizens Bank, N.A. v. Purther, 22 F. Supp. 3d 747, 752 (E.D. Mich. 2014) (quoting Choates v. Bastian Bros., Inc., 741 N.W.2d 539, 543 (Mich. Ct. App. 2007)). Moreover, if an undefined "term has acquired a unique legal meaning," the term must "be construed and understood

8

according to [its] peculiar and appropriate meaning." In re AJR, 852 N.W.2d 760, 766 (Mich. 2014); Mich. Comp. Laws § 8.3a ("[T]echnical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.").

The term sheet uses the Greek letter "π" on three occasions: (i) "if a payment is not made after 30 days, π's counsel may send a notice of default to Δ who shall have 30 days to cure;" (ii) "[i]n the event of an uncured default, π may reopen the adversary proceeding to enter a consent judgment for $170,000, less all payments made on account of the settlement;" and (iii) "π shall dismiss [the adversary proceeding] #14-4318-TJT [within] 30 days." Term Sheet at 24 (cm/ecf page).

Deshikachar's argument that "π" was an ambiguous term because he thought it referred to the trustee, as opposed to himself, is patently unfounded. It was Collins, and not the trustee, who brought the adversary proceeding against Deshikachar. It was Collins, and not the trustee, who would have authority to dismiss it. The parties to the mediation included Collins, Deshikachar, and their respective attorneys; the trustee did not participate in the mediation. Collins, Deshikachar, and their respective attorneys signed the term sheet; the trustee, who was not present, did not sign the term sheet. The $170,000 amount in the term sheet is the same amount agreed to in the consent judgment that was entered in Collins's state-court sexual harassment action against Deshikachar. And Deshikachar's attorney agreed with the bankruptcy court that, if Deshikachar made the first payment of $20,000 to Collins, Deshikachar would have fulfilled the first provision of the settlement agreement. 4/29/2015 Hr'g Tr. at 236 (cm/ecf page) (Dkt. 4). Furthermore, the Greek letter "π" has acquired a unique legal meaning; it is commonly used as shorthand to signify a plaintiff, as opposed to the Greek letter delta ("Δ"), which

represents a defendant.  Therefore, the use of "π" in the term sheet is reasonably susceptible to only one meaning — it referred to Collins as the plaintiff in the adversary proceeding.

Deshikachar then argues that the term sheet is ambiguous, not for the language in the term sheet itself, but because of what the term sheet lacks.  According to Deshikachar, the term sheet is ambiguous because it does not include the following: (i) a title; (ii) standard disclosures and affirmations; (iii) identity of the parties; (iv) an express statement of an offer or acceptance; (v) "to Whom, How and When the payment is to be made;" (vi) "a dispositive disclaimer or affirmation;" (vii) "a statement as to weather [sic] a confidentiality clause exists;" and (viii) a definition for what constitutes the "consent judgment."  Id. at 5.  Notably, Deshikachar's objection does not explain how any of these allegedly missing provisions actually created any ambiguity in the term sheet.  Nor does he provide any argument that the supposedly missing provisions constituted material terms.

Under both de novo review and the "clearly erroneous" standard, the Court finds that these alleged deficiencies did not render the term sheet ambiguous.  First, as noted supra, the identities of the parties and the provisions regarding when payments were to be made were clearly evident in the term sheet.  Although the term sheet does not describe the particular manner in which Deshikachar was to pay Collins (e.g., check/money order/cash; mail/hand delivery/electronic transfer), this does not render any of the material terms ambiguous.  And Deshikachar does not offer any argument that such detail surrounding the payments themselves was essential to the settlement agreement.

Second, there is no authority that the lack of a title in an agreement renders it ambiguous.  Nor does the lack of an express statement of an offer or acceptance render the term sheet ambiguous.  The law is clear that there are no "magic words" that are required to create an

10

enforceable settlement agreement.  Maida v. Ret. & Health Servs. Corp., 795 F. Supp. 210, 215 n.3 (E.D. Mich. 1992).

Third, Deshikachar does not explain why provisions regarding disclosures, disclaimers, affirmations, a confidentiality clause, or a definition of consent judgment were essential to a settlement agreement or created any ambiguity in the term sheet.  Although the settlement agreement may not have included certain provisions, this does not alter the material terms that were agreed to at the close of mediation.

Consequently, the term sheet "fairly admits" of only one interpretation — a settlement agreement between Collins and Deshikachar on all material terms.  See 51382 Gratiot Ave. Holdings, LLC v. Chesterfield Dev. Co., LLC, 835 F. Supp. 2d 384, 391 (E.D. Mich. 2011) ("If a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear.").

Accordingly, Deshikachar's first, second, and third objections lack merit.

**B.  Fourth Objection**

Deshikachar objects to the Magistrate Judge's conclusion that the Local Bankruptcy Rule precludes Deshikachar from offering statements made during the mediation as evidence of a unilateral mistake.  See Appellant Objs. at 5-6; In re Deshikachar, 2015 WL 7188371, at *5. Although not entirely clear, the argument seems to be that the Magistrate Judge was incorrect in stating that the claim of mistake was premised on statements made by the mediator and Deshikachar's counsel during the January 2015 mediation. According to Deshikachar, the "mistake stemmed from the fact that" he thought "π" represented the trustee, not Collins. Appellant Objs. at 5.

However, this argument was waived.  Like his ambiguity argument regarding the use of "π," Deshikachar's argument that there was a unilateral mistake because he thought "π" referred to the trustee was not raised in either his opening or rebuttal briefs on appeal.  Because this argument was made for the first time in his objections to an R&R, it is deemed waived.  <u>See Uduko</u>, 975 F. Supp. 2d at 757.

Although the fourth objection fails to delineate any other specific error in the R&R, it does set out a conclusory statement about mistake, misrepresentation, duress, and unconscionability.[3]  A similar conclusory statement is found in his brief on appeal.[4]  The Magistrate Judge held that Deshikachar waived the argument that the settlement agreement is unenforceable based on duress, undue influence, misrepresentation, and/or mistake based on waiver, because he "fail[ed] to explain the elements of the underlying defense[ ] or develop an argument in any meaningful way."  <u>In re Deshikachar</u>, 2015 WL 7188371, at *5.  The Court agrees with the Magistrate Judge that Deshikachar waived any argument based on these defenses because his statements were entirely conclusory.  <u>McPherson v. Kelsey</u>, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Accordingly, the fourth objection lacks merit.

### C.  Fifth Objection and Appellee's Request for Attorney Fees and Costs

In the R&R, the Magistrate Judge wrote:

---

[3] The fourth objection states, in part: "Detailed arguments/elements of affirmative defenses under Michigan contract laws including, Mistake, Misrepresentation, Duress, Unconscionbility [sic] was plead [sic] in the trial court (Doc#91) and the records were available to the magistrate during appeal."  Appellant Objs. at 5.

[4] "Last If not the least, defective Ascent [sic] due to Duress, undue influence, misrepresentation or mistake renders the contract unenforceable."  Appellant Br. at 9 (Dkt. 3)

> Deshikachar was accused long ago during the state court proceedings of attempting to manipulate the system. That observation remains apt, as he continues to unreasonably obstruct Collins's ability to find closure from this nine-year-old case despite his agreements to the 2013 consent judgment and the 2015 bankruptcy settlement. The Court views Deshikachar's appeal as frivolous and contumacious[.]

In re Deshikachar, 2015 WL 7188371, at *5

Deshikachar objects to the Magistrate Judge characterizing his appeal as "frivolous" and his conduct as "contumacious." Appellant Objs. at 6. According to Deshikachar, "[i]t is hard enough as is for a Pro se litigants [sic] to navigate the serpentine judicial corridors in search of justice and such open display of contempt is highly discouraging." Id.

In response, Collins points out that "[t]wo federal judges have held that [Deshikachar's] legal arguments have no merit and both went into incredible detail in explaining their decisions on the matter." Appellee Resp. at 29 (Dkt. 11). Collins maintains that "Deshikachar's objections are, at best frivolous, and at worst, the cynical continuation of his past attempts to skirt justice," and requests "attorney fees and costs for being forced to respond to this frivolity." Id.

Pursuant to Federal Rule of Bankruptcy Procedure 8020(a), if the Court "determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." See also Reese v. Reese (In re Reese), 485 F. App'x 32, 35 (6th Cir. 2012).[5] The party seeking the imposition of sanctions must do so by a separate motion. Mentag v. GMAC Mortg. LLC (In re Mentag), No. 12-13350, 2013 WL 489181, at *4 (E.D. Mich. Feb. 8, 2013) (quoting Jacob v. Killian, 437 F. App'x 460, 468 (6th Cir. 2011)).

---

[5] Accord Fed. R. App. P. 38 ("If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice and reasonable opportunity to respond, award just damages and single or double costs to the appellee.").

In awarding sanctions, the court must determine that the appeal is frivolous.  See Conway v. Nusbaum, 109 F. App'x 42, 43 (6th Cir. 2004).  A bankruptcy appeal is frivolous if "the result is obvious or when the appellant's argument is wholly without merit."  Smyth v. Edamerica, Inc. (In re Smyth), 470 B.R. 459, 462 (B.A.P. 6th Cir. 2012); Ramirez v. Debs-Elias, 407 F.3d 444, 450 (1st Cir. 2005) (sanctions warranted where "the overwhelming weight of precedent was against appellant's position, where appellant could set forth no facts to support its position, or where, in short, there simply was no legitimate basis for pursuing an appeal").

Based on Deshikachar's filings and the circumstances surrounding this case, the appeal to this Court may be frivolous, although the bankruptcy court found the issues raised by Deshikachar in opposition to the motion for enforcement of settlement not to be frivolous, 4/29/2015 Mot. Hr'g at 290 (cm/ecf page).  However, at this time, there is no separate motion for damages and costs pending before the Court, and the issue of frivolousness has not been fully briefed.  Therefore, the Court denies Collins's request without prejudice.

## II.  CONCLUSION

For the reasons stated above, the Court overrules Appellant Deshikachar's objections (Dkt. 10), accepts the recommendation contained in the R&R (Dkt. 9), and affirms the bankruptcy court's order.

SO ORDERED.


Dated:  March 3, 2016                         s/Mark A. Goldsmith
         Detroit, Michigan              MARK A. GOLDSMITH
                                        United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 3, 2016.

<div align="center" style="margin-left:40%">

<u>s/Karri Sandusky</u>
Case Manager

</div>